CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

SARA E. HENDERSON (CABN 329977)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7181
FAX: (415) 436-7234
Sara.Henderson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NATHANIAL LAPOLLA,<br><br>Defendant. | Case No. 25-cr-00298 WHO<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>Hearing Date: October 1, 2026<br>Hearing Time: 1:30 PM<br>Courtroom: 2, 17th Floor<br><br>Hon. William H. Orrick |

## INTRODUCTION

The Defendant possessed over 2,000 images and videos containing Child Sexual Abuse Material ("CSAM") on his personal laptop. Law enforcement first learned of the Defendant's repugnant interests when the defendant posted images and videos of child erotica on a website on the darkweb known for hosting CSAM. The Defendant possessed CSAM that depicted images and videos of male and female children ranging in age from infants to teenagers, engaged in masochistic, sadistic, and appalling sexual conduct.

For his conduct, the government recommends the Defendant be sentenced to 57 months imprisonment, representing a downward variance, to be followed by 10 years of supervised release with conditions agreed upon by the parties, and a restitution order of $18,000.

## PROCEDURAL HISTORY

On August 26, 2025, the government filed a Criminal Complaint charging the Defendant with one count of Possession of Visual Depictions of Minors Engaging in Sexually Explicit Conduct, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2). The Defendant was arrested on August 29, 2025, and made his initial appearance in federal court in McKinleyville on September 2, 2025, and was released on conditions.

On September 19, 2025, an Information was filed charging the Defendant with the same CSAM Possession count. The Defendant filed a waiver of indictment on September 23, 2025. The Defendant pled guilty on May 28, 2026, pursuant to a plea agreement. Sentencing is scheduled for October 1, 2026.

## OFFENSE CONDUCT AND SENTENCING GUIDELINES CALCULATION

### I. Lapolla Admitted the Following Facts in His Guilty Plea

The full factual statement is reflected in Paragraph 2 of the Plea Agreement (Dkt. 37), but a brief summary of the admitted facts is as follows:

On or about April 29, 2025, the Defendant possessed, on his computer, over 2,000 images and videos depicting minors, including some images with infants, engaged in sexually explicit activity. One video depicted an adult male penetrating a 10-year-old female child.

### II. Other Provable Facts

As mentioned above, law enforcement learned that the Defendant posted approximately eight images and videos of suspected child erotica on a website on the darkweb known for CSAM. PSR ¶ 7. FBI later obtained a forensic image of the Defendant's computer pursuant to a search warrant that contained over 2,000 images and videos containing CSAM. PSR ¶¶ 8. The following are a small sampling from the Defendant's collection of CSAM:

- StkelMGA0045.mp4
  - An 18 minute, 5 second video of an approximately 10-year-old female child. The child appeared to be prepubescent and had her arms tied behind her back and was bent over on a bed with her face placed into a pillow. The child could be heard screaming and crying into the pillow throughout the video. An adult male vaginally fornicated the child and ejaculated into her vagina.

- QV.mp4
    - A 7 minute, 56 second video of an approximately 4-year-old female child. The child wore a small tank-top with no underwear. The child began to rub her exposed vagina on an adult male's erect penis. The child then performed oral sex on the adult male. The child then again rubbed her exposed vagina on the male's erect penis. The male then appeared to rub and attempted (unsuccessfully) to insert his penis into the child's vagina. Lastly, the adult male masturbated in front of the child.
- 0000002_Carved.mp4
    - A 2 minute, 18 second video of an adult woman holding a nude female infant (approximately 1 year old) over a semi-nude male child (approximately four years old). The woman exposes and fondles the infant's vagina and anus. The woman then attempts to insert the male child's penis into the infants vagina and simulates the two children having sexual intercourse. The woman then continues to fondle the infants vagina.
- 00998- Trust me you rather do this then me.MP4
    - A 5 second video of apparently AI generated pornography depicting a nude, prepubescent female child approximately three years old. An adult male grips the child's arms and forcibly causes the child to have vaginal intercourse with a black sex toy while the child cries.
- Mouth ball2.jpg
    - A female child approximately 10-12 years old with early signs of breast development lays on a bed with blue/green sheets. The child's genitals and breasts are exposed. The child wears an outfit consisting of various black belts and chains which bind her arms to her legs. The child also wears a black mask and has a ball-gag in her mouth.
- IMG_5806.jpg
    - A female child approximately 7-8 years old sits on a chair wearing a black shirt, black underwear, black socks, and black boots. The child's leads are spread and her underwear pulled to the side to expose her vagina. The child's face is partially concealed with a medical mask. An adult male's erect penis is seen facing the child from the photographer's perspective.
- Photo_2022-06-28_20-37-14.jpg and photo_2022-06-28_20-37-15.jpg
    - Two images of two children, one male and one female, each approximately 10-years-old, exposing their genitals. In the second picture, the female child is performing oral sex on the male child.

The files also included a handful of .txt files containing descriptions of video recordings of underaged females engaged in sexual acts. Additionally, the drive contained 332 encrypted files that the FBI was unable to view, but which were titled "8yo black slut BJ.mp4," "teen schoolgirl fucked by her dog on the ground in her room.mp4," and "Mom Makes Her 13 Year Old Son Cum Fast.webm." PSR ¶ 9.

The Defendant has access to very young minor children and vulnerable children/adults. As of July 2, 2025, the Defendant's employer reported that he was employed but was on extended paternity leave with no known return to work date yet known. The Defendant worked for Multiplicity

Therapeutic Services, Inc. as a behavioral consultant. According to the job description, the Defendant's responsibilities include development of individual behavior support plans for clients to reduce maladaptive target behavior; one-on-one work with clients to ensure their health and safety, as well as to implement a behavior plan; work with a client's social support network; supervision of behavioral aides who work one-on-one with clients; and data collection relating to the implementation of the behavior support plan.

On their website as of August 11, 2025,[1] Multiplicity describes themselves as "Autism Support Services." The portion of the website titled "Our Vision" indicates they provide services to individuals in regional centers, residential facilities, and various schools throughout Northern California. The website indicates its services are provided to both adults and children.

The Defendant also has two minor children at home. The Defendant's spouse did not report any knowledge of sexual abuse of their children, the government nevertheless has concern for their safety as the Defendant can no longer satisfy his desire for CSAM online or outside the home because he is under strict conditions of supervision.

## III. The PSR Accurately Calculated the Offense Level and Criminal History

The Probation Office's Sentencing Guidelines calculation in the PSR comports with the Parties' calculation in paragraph 7 of the plea agreement which is as follows:

| | | |
|---|---|---|
| a. | Base Offense Level, U.S.S.G. § 2G2.2(a)(1): | 18 |
| b. | Specific offense characteristics under U.S.S.G. Ch. 2 | |
| | Material involving prepubescent / under 12 minor (§ 2G2.2(b)(2)) | +2 |
| | Material portraying sadistic/masochistic conduct; or portraying infants/toddlers (§ 2G2.2(b)(4)(A)&(B)) | +4 |
| | Use of computer (2G2.2(b)(6)); | +2 |
| | More than 600 images (§ 2G2.2(b)(7)(D)) | +5 |
| c. | Acceptance of Responsibility: | - 3 |
| | If I meet the requirements of U.S.S.G. § 3E1.1, I may be entitled to a three-level reduction for acceptance of responsibility, provided that I forthrightly admit my guilt, cooperate with the Court and the Probation Office in any presentence investigation ordered by the Court, and continue | |

[1] https://www.multiplicityinc.com/about-us.html

to manifest an acceptance of responsibility through and including the time of sentencing.

d. Adjusted Offense Level: 28

The Total Offense Level is 28. PSR ¶¶ 20-32. The government further agrees that the Defendant's criminal history category is I. PSR ¶ 36. Total Offense Level 28 at CHC I yields a Guidelines range of 78 to 97 months imprisonment. PSR ¶ 69.

## SENTENCING RECOMMENDATION

### I. Legal Standard

The United States Sentencing Guidelines serve as "the starting point and the initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007).

The overarching goal of sentencing, as set forth by Congress, is for the Court to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991 (citation omitted). In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need for the sentence imposed to protect the public from further crimes of the defendant;

(5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(6) the need to provide restitution to any victims of the offense.

### II. A Sentence of 57 Months in Prison is Sufficient but Not Greater Than Necessary

Recognizing the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence, as well as considering the Defendant's history and characteristics, the government recommends that the Court sentence the Defendant to (i) a

term of imprisonment of 57 months; (ii) supervised release for 10 years, to include conditions agreed upon by the parties; (iii) a special assessment of $100; and (iv) a restitution order of $18,000.

The most important factors in determining the sentence in this case are the nature and seriousness of the Defendant's offense. The offense is gravely serious. While he did not commit hands-on conduct, the Defendant's collection of CSAM was vast—over 2,000 images and videos—and the content of those images and videos were egregious. In addition to videos described above, the Defendant possessed a video depicting a 10-year-old female child with her arms tied behind her back and bent over a bed with her face in a pillow who can be heard screaming and crying while an adult male has vaginal sex with the child.

Often times the offense at issue here is described as mere possession—that woefully mischaracterizes the nature of this offense. Those who choose to possess CSAM cause significant harm to victims who suffered not only at the hands of their abusers when the images and videos were created, but repeatedly by those who view, possess, and distribute the images and videos of their abuse. Additionally, the production of CSAM occurs because there is an audience for the vile material. Victims are robbed of their innocence, and even when identified and survive the abuse, their abuse never really ends. Of the Defendant's vast CSAM collection, law enforcement was able to identify victims in 25 images and videos, each video depicting at least one victim. Unfortunately, many victims remain unidentified.

Two identified victims in this case submitted impact statements— "Aster" and "Posey." PSR ¶¶ 14-15. "Aster" wrote:

> During the time of my abuse I had no idea it would follow me around for the rest of my life. I felt a sense of relief when my abuser was arrested. The person who abused me was behind bars. What I didn't realize was that the abuse would continue in different ways long after the physical abuse had ended…Knowing the pictures are out there will follow me my whole life until the internet dies, has created intimacy issues for me in both relationships and friendships. . . . With the images out there I do not have a good sense of control in my life.

"Posey's" mother wrote the following:

> My daughter's sexual abuse and exploitation began years before the day we were made aware, but it also did not end that day either. She is the victim of internet sex crimes that will continue to violate her for the rest of her life. I do not believe anyone can fully understand the effect the internet has unless you experience something like this. I cannot describe

> how it feels to know your child went through abuse like this, how you believed you were keeping her safe when, in reality, cowards hiding behind a screen were preying on her. This is not a lesser crime because my daughter did not have physical contact with her abusers. It is no less of a crime because she never personally met them. These are modern predators who have found perverse ways to manipulate, intimidate, and abuse children from behind a screen. The pornographic images and videos of my child will always be circulating on the internet. Her name will forever be linked with depraved sexual acts and imagery. When you search her name, the first thing you will find will not be all of her accomplishments, how good of a student she is, how many people she's positively influenced – it will be images of an underage girl being coerced into performing graphic sexual acts.

Given these harms that Defendant helped inflict by his possession of and desire for CSAM, a substantial sentence is appropriate.

The government recommends a sentence of 57 months. This marks a significant downward variance given the defendant's history and characteristics discussed below. According to the Judiciary Sentencing INformation data, defendants with the same offense level and Criminal History Category as the Defendant have been sentenced to: (i) an average term imprisonment of 56 months, and (ii) a median term of imprisonment of 60 months. PSR ¶ 88. Accordingly, the government's recommendation would avoid unwarranted sentencing disparities. The Defendant's request for an 18-month sentence would constitute an unwarranted disparity which the statute cautions against.

Finally, the government recognizes the Defendant's history and characteristics which include a difficult and unfortunate childhood and substance abuse to cope with the childhood trauma he experienced and no criminal history. The Defendant reported to Probation that he experienced an unstable and traumatic childhood consisting of emotional neglect, frequent relocation, physical punishment, and sexual abuse. PSR ¶ 42. His family moved frequently making it difficult to develop community and friendships. His father was reportedly an alcoholic and his mother suffered from mental illness. PSR ¶ 43. He experienced sexual abuse at the hands of family members as early as four-years-old. PSR ¶ 44. He turned to substances to deal with the trauma. As a teenager he began drinking alcohol to cope, and at the time of the offense conduct, he was drinking daily. PSR ¶ 45. To be clear, these tribulations do not excuse the Defendant's conduct. They do, however, inform the government's recommendation to a sentence below the Guidelines range.

Additionally, the Defendant swiftly accepted responsibility for his conduct. He also embraced

therapies for his mental health and substance abuse issues - critical steps to ensure he does not reoffend. Nevertheless, the sheer quantity and grave nature of the contents of the CSAM he possessed, the Defendant should be sentenced to 57 months in prison. For offenses involving the sexual abuse of children, the consequences must be serious and certain to have a chance at deterring the Defendant and others similarly situated from engaging in conduct that causes devasting harm to the child victims.

**III. Supervised Release, Restitution, and Fine**

In Paragraph 8 of the Plea Agreement, the parties agreed to special conditions that, given the nature of the offense and the defendant's reported history of mental health and alcohol abuse issues, are reasonably related to deterrence and rehabilitation. *See* Appendix A, Plea Agreement. The Court should impose those conditions.

Restitution is mandatory in this case. 18 U.S.C. § 2259(b)(2)(B). Two victims submitted restitution requests as follows:

- "Aster" of the "Lexie" Series
  - $10,000
- "Posey" of the "Purple Cheer" Series
  - $8,000

The parties have agreed that a restitution order of $18,000 based on victims' restitution requests and supporting documents is appropriate.

Additionally, there are mandatory special assessments. There is a standard $100 assessment per felony count. *See* 18 U.S.C. § 3013(a)(2)(A). Additional CSAM-related assessments also apply. Pursuant to Justice for Victims of Trafficking Act of 2015, there is an additional $5,000 assessment for any non-indigent defendant. *See* 18 U.S.C. § 3014(a)(3). And under 18 U.S.C. § 2259A, the Defendant is subject to an additional special assessment upon conviction of a child pornography offense, in the amount of up to up to $17,000.

Finally, Probation recommends the Court waive the fine because the defendant has minimal liquid assets, is unemployed, has a negative monthly cash flow, and is financially supported by his spouse. PSR ¶ 66.

**CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court order the

Defendant to: (i) a term of imprisonment of 57 months; (ii) supervised release for 10 years, to include conditions agreed upon by the parties; (iii) a special assessment of $100; and a restitution order of $18,000.

DATED: September 24, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Sara E. Henderson*
SARA E. HENDERSON
Assistant United States Attorney